# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL BEDNAR,** | |
| Plaintiff, | |
| v. | **Case No. 16 C 6638** |
| **PIERCE & ASSOCIATES, P.C., PNC BANK NATIONAL ASSOCIATION and SELECT PORTFOLIO SERVICING, INC.,** | **Judge Harry D. Leinenweber** |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant PNC Bank, National Association ("PNC") and Defendant Select Portfolio Servicing Inc.'s ("SPS") (collectively, the "Defendants") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 18]. For the reasons stated herein, the Motion is granted.

## I. BACKGROUND

On November 29, 2014, Plaintiff Michael Bednar ("Bednar" or "Plaintiff") filed for bankruptcy. Among the debts included in his bankruptcy was a mortgage held by PNC and serviced by SPS. Bednar proposed as part of his bankruptcy plan to surrender the subject property in full satisfaction of the creditors' claims. Pursuant to the plan, the bankruptcy court lifted the automatic stay – applicable to all debts brought into bankruptcy – against

SPS, allowing it to pursue foreclosure against the property on behalf of PNC. PNC sold the subject property on December 18, 2015.

On February 1, 2016, PNC obtained from the state court an Order Approving Report of Sale and Distribution ("Order"). As is crucial to Bednar's claim in this case, the Order stated that there was a personal deficiency judgment against him for the amount of $3,430.28.

At the time that the Order was entered, Bednar's bankruptcy was ongoing. This means that the automatic stay on "any act to collect, assess, or recover a claim" against him was still in effect. *See,* 11 U.S.C. § 362. The deficiency judgment thus violated the stay order. Bednar, however, did not object to the violation of the stay despite being represented by counsel in bankruptcy (the same law firm that represents him in the current case). Instead, he amended his bankruptcy schedule to disclose among his assets a potential claim against SPS for violating the automatic stay. *See, In re Bednar,* No. 14-42970, Dkt. No. 20 (Bankr. N.D. Ill. May 27, 2106). Three days later, Bednar received a bankruptcy discharge.

On June 24, 2016, Bednar filed the present lawsuit, alleging that he "has suffered damages in the form of emotional distress and time spent consulting with his attorneys as a result of" the personal deficiency judgment against him. ECF

No. 1 ("Compl.") ¶¶ 67, 82. He sues PNC and SPS under Illinois state law and a third defendant, not a part of this Motion to Dismiss, on the Fair Debt Collection Practices Act ("FDCPA"). Shortly after the filing of Plaintiff's lawsuit, PNC moved to vacate the judgment. Plaintiff does not allege that either PNC or SPS took any steps towards the collection of the judgment in between the time the Order was entered to when it was vacated.

## II. ANALYSIS

Plaintiff claims that PNC and SPS violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). He alleges that "[i]t was unfair and deceptive for PNC [and SPS] to seek to collect the subject loan from Plaintiff through the personal deficiency judgment" when "the subject loan was not collectible at the time the personal deficiency judgment was entered against Plaintiff" due to the automatic stay. Compl. ¶¶ 62, 76.

Defendants argue that the action fails on several independent grounds. First, Defendants contend that the ICFA is preempted by the Bankruptcy Code, specifically the stay provision and the provision allowing a debtor to recover damages against a creditor for willfully violating a stay. Second, Defendants argue that Plaintiff has failed to allege elements of an ICFA claim. Finally, Defendants assert that Plaintiff lacks standing to sue PNC.

The Court finds that Plaintiff's ICFA claim is preempted. It also finds that Plaintiff has not plausibly alleged actual damages. Because his claim against both Defendants therefore must be dismissed, the Court does not address the remaining arguments that Defendants raise.

**A. Preemption**

PNC and SPS argue that because Plaintiff's ICFA claim is premised solely on violation of the automatic stay operative in bankruptcy proceedings, the claim is preempted by the Bankruptcy Code. The Defendants rely on *MSR Expl. v. Meridian Oil,* 74 F.3d 910 (9th Cir. 1996), and its progeny of cases to support this proposition.

In *MSR,* the Ninth Circuit laid out the rationale for why the Bankruptcy Code should preempt a state law claim that arose out bankruptcy proceedings. The defendants, MSR's creditors, had filed claims against MSR during the latter's bankruptcy. *MSR,* 74 F.3d at 912. The claims were disallowed by the bankruptcy court. *Id.* As the Ninth Circuit noted, "MSR did not pursue . . . any [] remedy in the bankruptcy court" for this disallowed filing. *Id.* Instead, "MSR waited until its reorganization plan was confirmed and substantially consummated, whereupon it brought this malicious prosecution action in the district court." *Id.* The district court found that the

Bankruptcy Code preempted MSR's state-law action. The Ninth Circuit affirmed. *Id.* at 911.

Three reasons underlay the court's holding. First, "the exclusivity of federal jurisdiction over bankruptcy matters" and "the unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws" indicate that Congress intends "to leave the regulation of parties before the bankruptcy court in the hands of the federal courts alone." *MSR,* 74 F.3d at 913, 915. Second, "the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code," including the various remedies available in the Code to deter and punish "the misuse of the bankruptcy process," "create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike." *Id.* at 914-15. Last, "[t]he threat of later state litigation may well interfere with the filings of claims by creditors." *Id.* at 916. But "[w]hether creditors should be deterred, and when, is a matter unique to the flow of the bankruptcy process itself – a matter solely within the hands of the federal courts." *Id.* In short, "the highly complex laws needed" and provided by the bankruptcy courts "underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state . . . actions." *Id.* at 914.

Building on *MSR,* courts have reasoned that a state law claim, including an ICFA claim, is preempted by the Bankruptcy Code when the claim would not exist but for some violation of the Code. *See, Cox v. Zale Delaware,* No. 97 C 4464, 1998 U.S. Dist. LEXIS 10707, at *14 (N.D. Ill. July 9, 1998) (finding the state claims preempted when they "depend solely upon and thus are intricately related to alleged violations of the Code"); *Holloway v. Household Auto. Fin. Corp.,* 227 B.R. 501, 507-08 (N.D. Ill. 1998) (ruling an ICFA claim preempted because without the requirement imposed by the Bankruptcy Code, the plaintiff "would have no grounds on which to bring an action" under the ICFA); and *Knox v. Sunstar Acceptance Corp. (In re Knox),* 237 B.R. 687, 702 (Bankr. N.D. Ill. 1999) ("Without the Bankruptcy Code's requirement that [the defendant] SAC submit proofs of claim . . . Knox would have no factual basis on which to bring an action for deceptive conduct under the Illinois consumer fraud statute."). This is particularly true when the Bankruptcy Code itself provides a remedy for such a violation. *See, Knox,* 237 B.R. at 702 (stating that because "the claim under the Illinois Consumer Fraud Act seek[s] remedies for violations of the Bankruptcy Code for which the Code itself and Rules provide other remedies, . . . [the claim is] preempted by the Bankruptcy Code"); *Koffman v. Osteoimplant Tech.,* 182 B.R. 115, 125 (D. Md. 1995) (disallowing state tort actions based on violations of the

Bankruptcy Code because to allow them "ultimately would have the effect of permitting state law standards to modify the incentive structure of the Bankruptcy Code and its remedial scheme"); and *Brandt v. Swisstronics, Inc. (In re Shape, Inc.)*, 135 B.R. 707 (Bankr. D. Me. 1992) (stating that where the Bankruptcy Code "is applicable . . . and has its own enforcement scheme and separate adjudicative framework, it must supersede any state law remedies"). Succinctly put, "[t]he expansive reach of the Code preempts virtually all claims relating to alleged misconduct in the bankruptcy courts." *Cox,* 1998 U.S. Dist. LEXIS 10707, at *14.

The lessons from *MSR* and its line of cases apply here. The alleged misconduct complained of in this case, the filing of a personal deficiency judgment, is allegedly unlawful because it violated the Bankruptcy Code's automatic stay provision. The Plaintiff, however, did not avail himself of the remedy available to him under the Bankruptcy Code to punish such misconduct. *See,* 11 U.S.C. § 362(k) ("[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."). Instead, he chose to wait until his bankruptcy case was settled and then brought a state-law claim in the district court. *See, Price v. Rochford,* 947 F.2d 829, 830-31 (7th Cir.

1991) (noting that an unhappy debtor can bring a cause of action under § 362(k) even after bankruptcy proceedings have terminated). To allow Plaintiff to bring his claim now would pile on additional state-law deterrent that is improper given the comprehensive regulations provided by the bankruptcy system.

Plaintiff objects that cases cited by Defendants all "predate the Seventh Circuit's takedown of the notion of the Bankruptcy Code's comprehensiveness in *Randolph*." ECF. No. 23 (Pl.'s Resp. to Mot. Dismiss) at 5 n.2. But Plaintiff misses the mark in contending that *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004), changed the legal landscape as to the question of preemption. The issue the court dealt with in *Randolph* was not preemption – or the conflict between a state law and a federal statute, as we have here between the Illinois Consumer Fraud Act and the federal Bankruptcy Code – but repeal, or the conflict between two federal statutes. The court held in *Randolph* that the FDCPA was not repealed by the Bankruptcy Code. *Id.* at 730. But its analysis in reaching that decision cannot be applied to the area of preemption. As the *Randolph* court explicitly stated, "[p]reemption is more readily inferred" than the "rare bird" that is repeal. *Id.* The standard for finding a repeal is thus different and stricter than that to find a preemption. As such, Plaintiff's reliance on *Randolph* and *Freeman v. Ocwen Loan Servicing, Inc.,* No. 15 C 11888, 2016 U.S.

Dist. LEXIS 82751, at *24-27 (N.D. Ill. June 27, 2016), which applied the standard set by *Randolph* to decide a preemption question, is misplaced.

Moreover, *Randolph* did not disturb the line of cases that Defendants rely on. *Randolph* itself said that "decisions such as *Cox v. Zale*" were uninformative because of the different legal issues presented but otherwise did not suggest that the *Cox* line of cases is incorrect. *See, Randolph,* 368 F.3d at 730. The Seventh Circuit also reaffirmed after *Randolph* that "the bankruptcy statutes have significant preemptive force." *Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 723 (7th Cir. 2010). In making that statement, the court cited *MSR* and *Knox*, thus acknowledging the vitality of these pre-*Randolph* cases. *See, id.*

Finally, despite criticizing cases pre-dating *Randolph*, Plaintiff cites such a case. It is true that the court in *Wagner v. Ocwen Fed. Bank,* Case No. 99 C 5404, 2000 U.S. Dist. LEXIS 12463, at *7-8 (N.D. Ill. Aug. 28, 2000), ruled that the plaintiff's state law claims were not preempted by the Bankruptcy Code. However, the court distinguished its holding from *Cox* and the likes on the ground that, unlike in *Cox*, the plaintiff in *Wagner* had a cause of action even absent the Bankruptcy Code. *Id.* That is not true here. Here, Plaintiff does not dispute that his claim arose due to Defendants'

violation of the automatic stay operative in bankruptcy. Without the Bankruptcy Code's stay provision, there would be no violation and Plaintiff would have no cause of action, making Plaintiff's case like *Cox,* not *Wagner*.

In sum, Defendants have persuasively argued that Plaintiff's ICFA claim is preempted by the Bankruptcy Code. Even if this were not so, Plaintiff's Complaint still fails because he did not plead actual damages.

**B. Actual Damages**

"The Consumer Fraud Act provides remedies for purely economic injuries." *Morris v. Harvey Cycle & Camper, Inc.,* 392 Ill. App. 3d 399, 402 (2009). Such actual injuries "must be calculable and measured by the plaintiff's loss." *Id.* (internal quotation marks omitted). "The failure to allege specific, actual damages precludes a claim brought under the Consumer Fraud Act." *Id*.

Plaintiff in this case has alleged two forms of damages: emotional distress and time spent consulting with his attorney. His claim for emotional distress standing alone cannot satisfy the requirement to state "actual damages in the form of specific economic injuries." *Id.* at 402-403 (affirming a dismissal of the plaintiff's ICFA claim when she alleged only emotional damages). *See also, Thrasher-Lyon v. Ill. Farmers Ins. Co.,* 861 F. Supp. 2d 898, 913 (N.D. Ill. 2012) (dismissing the

plaintiff's claim because "where a plaintiff only alleges that she suffered emotional damages in an ICFA claim, such allegations are not sufficient to survive a motion to dismiss") and *Alabi v. Homecomings Fin. LLC,* No. 09-cv-4757, 2011 U.S. Dist. LEXIS 107632, at *25-26 n.12 (N.D. Ill. Sep. 21, 2011) (disregarding the allegation that the defendants' conduct caused the plaintiff "confusion and concern" because "the ICFA allows remedies only for economic injuries, not for emotional distress"). Thus, whether Plaintiff has plausibly alleged actual damages depends on whether the time spent consulting with his attorney amounts to compensable economic injuries.

Plaintiff admits that the "time and expenses" that he refers to in his Complaint are those incurred in bringing this lawsuit. *See,* Pl.'s Resp. to Mot. Dismiss at 7. As a preliminary matter, if the time and expenses in bringing a lawsuit qualify as actual damages, then all lawsuits, simply because they were brought, would satisfy the requirement to allege such damages. Moreover, that Plaintiff's expenditures relate to the bringing of the current action as opposed to responding to any actual collection effort by the Defendants distinguishes Plaintiff's case from those he relies on to support the position that he pled actual damages.

In *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F.Supp.2d 929, 934 (N.D. Ill. 2012), the creditor-defendants

sued the debtor-plaintiffs to collect on the debts prior to the debtors bringing their own lawsuit. The court found that "the time and money Plaintiffs spent *defending* the debt collection lawsuits" plausibly constituted actual damages under the ICFA. *Id.* at 942 (emphasis added) (internal quotation marks omitted). Plaintiff in this case was not sued and did not spend any time or money defending any such lawsuit.

The two other cases cited by Plaintiff both lean on the authority of *Grant-Hall*. *Armbrister v. Pushpin Holdings, LLC*, 896 F.Supp.2d 746, 756 (N.D. Ill. 2012), is like *Grant-Hall* in that the debtor-plaintiffs were sued before commencing their own lawsuit. *Armbrister* is also rather helpful to Defendants, not Plaintiff. First, the court in *Armbrister* dismissed the ICFA claim for lack of actual damages. *Id.* at 757. Second, it did this when it was unclear to the court whether the plaintiffs "have filed an appearance or incurred any expenses" in defending prior debt collection lawsuits. *Id.* Here, it is undisputed that Bednar did not file an appearance or incur expenses in defending any debt collection lawsuit brought by the Defendants. There was no such lawsuit, leaving Plaintiff's own action in even worse stead than the dismissed *Armbrister*.

Finally, in *Thompson v. CACH, LLC,* No. 14 CV 0313, 2014 U.S. Dist. LEXIS 151255, at *2-5 (N.D. Ill. Oct. 24, 2014), the plaintiff alleged that the creditor-defendants took steps to

collect her debt, including by calling her at work, sending a wage deduction summons to her workplace, and thereby "caus[ing] her to divert time and energy away from her job." The defendants then chose to attack the plaintiff's allegation of actual damages. After noting the sparseness of the defendants' briefing, calling their actual damages argument "untimely," and devoting one paragraph to the issue, the court denied the defendants' motion to dismiss because it was unclear whether the defendants could support their contention that "Thompson's loss of time at work *and* costs incurred in consulting her attorney are not actual damages." *Id.* at *23-24 (emphasis added) (internal quotation marks omitted). *Thompson* is thus both different in facts from Plaintiff's case and sparing in analytical support for Plaintiff's position.

One last argument remains to be considered and quickly dismissed. Although not alleged in his Complaint, Plaintiff in his response to the Motion to Dismiss argues that "the entry of the deficiency judgment is in [and] of itself an injury." Pl.'s Resp. to Mot. Dismiss at 7. This is because "[a] judgment is public record and thus may have been reported to credit reporting agencies, which in turn will have adverse effect on Plaintiff's credit worthiness." *Id.* Plaintiff uses the word "may" because he has not made any allegation that the judgment was in fact reported, much less any allegation of calculable

harm flowing from such reporting. The alleged injury thus falls short of the calculable, measured loss that Plaintiff must plead under the ICFA.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss [ECF No. 18] is granted.

**IT IS SO ORDERED.**

 Harry D. Leinenweber, Judge
 United States District Court

Dated: November 10, 2016